# HENRY ROTHER AND ANOTHER v. LEO HINIKER.[1]

October 25, 1940.

No. 32,324.

*Rietz & McBrien,* for appellants.
*Burton R. Sawyer* and *James O. Caulfield,* for respondent.

HILTON, JUSTICE.

This is an action by Leo Hiniker against the Rothers, tried upon a counterclaim, for damages arising from fraud in the sale of certain real and personal property. Twice verdicts have been for Hiniker. The Rothers now seek a reversal of an order denying their motion for judgment notwithstanding or a new trial.

[1]Reported in 294 N. W. 644.

On November 8, 1937, Hiniker saw this advertisement in a St. Paul newspaper:

"On account of old age we are forced to sell our beautiful 200 acre black loam farm. Eqpt. with 23 head stock, 15 cows freshening, 5 horses, 18 hogs, poultry. All grain and seed, full silo, machinery, 20 miles south of St. Paul, $65 per acre, on terms less than rent. This is a money-maker, stock and farm all clear. For further information call Al Fuller.

"MINNESOTA REALTY
"635 University, El 6311."

Hiniker was renting a farm at Waterville, about 45 miles from the advertised place. On November 8 Mr. Michaels from the realty office went with Hiniker to the farm. No one was there, but Hiniker spent about a half-hour looking at buildings, cows, and walked about 20 rods into the pasture. He did not see any tillable soil but he made as full an inspection as then desired.

He returned to the farm on the morning of November 10 and met the Rothers, Fuller, and Michaels. The four men examined the premises. At the barn Rother stated that under some shreddings were 15 tons of alfalfa. Actually there were just three tons. Hiniker testified that he believed Rother. Next Hiniker testified: "As we crossed over the garden spot I asked Mr. Rother if this land was sandy and he said, 'No sand here, you can dig down as far as you want to and it is all clay.'"

The group walked along a road that divides the farm north and south. In so doing they walked by freshly plowed land. At one time they came to some cedar trees where there was one-half acre of sand. Hiniker testified this was eroded from a big rock. They did not go very close to the northwest or northeast corners where sand existed in the largest quantities. Stubble and a hill were also supposed to have made discovery more difficult. The ground was not frozen or cov-

ered by snow. Hiniker did not begin to discover the substantial areas of sandy soil until in January.

Hiniker looked at the cattle and claims that Rother told him that the 15 cows had brought in an average of $200 a month for the last year, although the amount was actually $35 to $80. According to Hiniker, he relied upon this statement.

Hiniker testified that had it not been for the advertisement with its statements about the farm being a "money-maker" and having "black loam" he would not have purchased. In response to a query why he looked at the premises, he stated, "Naturally I wanted to look at the farm a little." He testified that he went to the farm to look at soil. He admitted that he made as full an inspection as he wished and that he had a full opportunity but did not make a more complete examination because "they advertised their farm of black soil and they told me there wasn't any sand there so I didn't look at it any further." He testified that Fuller told him before he saw the property that it was "black soil" and that he relied also upon this.

Hiniker had lived on a farm all his life and for the past 12 years had farmed on his own. It was his opinion that he knew the value of cattle and soil. While he had lived for a while about 15 miles from the involved premises, for all practical purposes he was a stranger in the area, embarking on his initial real estate venture.

The earnest money contract was signed after lunch on November 10 and the deed and bill of sale a few days later.

Defensively, the evidence was aimed at repudiation of the claimed misrepresentations.

Civil actions require proof of fraud by a fair preponderance of the evidence. Dowden v. Kanuch, 158 Minn. 75, 196 N. W. 819. If there is a misrepresentation but the purchaser, instead of relying upon it, makes an independent examination and acts upon the result thereof without regard to the misrepresentations, there is no cause of action. See

Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, 170, Ann. Cas. 1915B, 775. But "this court * * * has held that, if the buyer, instead of investigating as fully as he might, made only a partial investigation, and relied in part upon such investigation and in part upon the representations of the adverse party, and was deceived by such representations to his injury, he may maintain an action for such deceit." *Id.* p. 454; Schmidt v. Thompson, 140 Minn. 180, 184, 167 N. W. 543. It is sufficient if the representation, although not the sole cause, constituted "one of several inducements and had a material influence upon the plaintiff." See Old Colony L. Ins. Co. v. Moeglein, 165 Minn. 117, 119, 205 N. W. 885, 886.

We think that the evidence is such that the case is within the partial investigation and partial reliance rule. But there must be a reversal. The evidence presents a close fact question, and for this reason any single factor might easily tip the balance of the scales.

The trial court after mentioning that the advertisement stated the farm was a "money-maker" instructed that "it is for you to determine whether under all the evidence that statement was correct and whether it was made by Mr. Rother and you may also consider in that respect the ad."

On two grounds this was error. In the first place, there is nothing in the entire record satisfactorily establishing the falsity of the statement. Rother testified that the farm had not made money for the past two years, but immediately thereafter he qualified and destroyed the probative value of this statement so far as showing that the representation was false by responding as follows to a question by appellant's attorney as to why it had not made money, "I had a lot of doctor bills to pay." He also testified, "It was a money-maker, we made money on it." With the testimony so completely confused, the matter was dropped so far as we can discover or have been shown. Obviously it is utterly impossible to determine whether the farm itself was profitable.

There is evidence that the taxes were delinquent and not paid until after the sale. But this does not establish that the farm did not make money, especially in view of the doctor bills. Respondent makes the statement, without reference to the evidence, that if the milk checks had been $200 a month instead of $35 to $80 the farm would have been profitable. There was simply nothing for the jury, and it was prejudicial to submit the question.

Secondly, Hiniker could not reasonably rely on the statement. While we have held that profitableness of a business is a statement of fact, Perkins v. Meyerton, 190 Minn. 542, 544, 251 N. W. 559, several factors distinguish a farm from a business. A farmer is not dependent upon good will. His income is primarily from his own endeavor, subject to unpredictable weather conditions. Hiniker had lived on a farm all his life and had farmed on his "own." It was unreasonable for him to rely on the statement. It was not a statement of fact.

Since a new trial must be ordered, to discourage a subsequent appeal some items raised in the present need to be mentioned.

On the new trial, if appellants' counsel includes in his offer of proof whether Hiniker was asked about the matter, he should be permitted to make inquiry whether at the first trial Hiniker made any claim that there were misrepresentations by the agents. Appellants are also entitled to an instruction that if Rother told Hiniker that the land was sandy, Hiniker could not rely upon the advertisement.

As to the admissibility of the tax assessment on the question of the farm's value, we think that a careful reading of the annotation in 17 A. L. R. 170; McCormick, Damages, p. 179, and proper regard for the facts in Rosenberger v. H. E. Wilcox Motor Co. 145 Minn. 408, 177 N. W. 625, will give the litigants sufficient information.

Respondent is entitled to inquire on the question of ratification whether Rother ever offered to return the purchase

price after learning the agents made misrepresentations. Counsel, in all fairness, should so phrase the question that it will not convey that there was a legal duty save to avoid a ratification under the rule of Roseberry v. Hart-Parr Co. 145 Minn. 142, 145, 176 N. W. 175, 176 (holding that a principal ratified by asserting "a right to the fruits" of the agent's act when the action was brought).

The trial court should not allow the jury to consider whether Hiniker relied upon the statement that the 15 cows brought in $200 per month. Hiniker was acquainted with cattle and certainly must have been acquainted with agricultural conditions. He testified that he had milked cows for 25 years but was acquainted only with the price of cream during this time. Still it was unreasonable for him to rely, if he did, upon this statement, and it should not have any probative value in the case.

This disposes of points likely to cause difficulty on the new trial. With the foregoing and two trials behind them, counsel should now be able to try the matter in finality without additional difficulty.

Order reversed and new trial ordered.