CHASE MANHATTAN BANK, N.A. NEW YORK, NEW YORK, Appellant,

v.

CLUSIAU SALES & RENTAL, INC., Respondent.

No. 51599.

Supreme Court of Minnesota.

July 24, 1981.

Warren H. Anderson, Grand Rapids, for appellant.

Murphy, Lano & Kalar, Grand Rapids, for respondent.

YETKA, Justice.

In this action brought by plaintiff bank against defendant Clusiau to recover $9,197.50, allegedly due under a lease of pipebending equipment assigned by the lessor, Scotti Muffler Company, to the bank, the trial court determined that defendant was entitled to rescind the lease because Scotti had violated Minnesota's franchise act by offering defendant an "Exclusive Dealership Trademark and License Agreement," of which the lease was a part, and that waiver of defense provisions in the lease and in an undated instrument in which Clusiau acknowledged Scotti's right

to assign the lease were contrary to public policy. *See* Minn.Stat. §§ 80C.01–.22 (1980). We affirm.

The issues presented by plaintiff's appeal include (1) whether Scotti violated Minn. Stat. § 80C.02 (1980) by offering or selling in this state a franchise as defined in section 80C.01(4) without filing a registration statement, (2) whether, if so, the lease was part of the franchise, and (3) whether the waiver of defense provisions were valid. The parties furnished affidavits in connection with motions made by each for summary judgment on the first issue and subsequently filed a supplemental stipulation of facts as the basis for decision. The facts will be stated as they relate to the issues.

1. *Scotti's violation of the Franchise Statute.* The exclusive dealership agreement, executed by Clusiau and Scotti on November 25, 1974, provided that Scotti granted Clusiau as "dealer" a license to operate a Scotti Muffler Center for sales and installation of mufflers and tailpipes. The center was to employ the "Scotti System," utilizing trade secrets, special signs and decor, equipment and supplies, methods of bookkeeping, advertising and marketing, and business procedures and policies. Scotti agreed that Clusiau would operate the only Scotti Muffler Center in Itasca County and that Scotti would lease to Clusiau the necessary fixtures and equipment, furnish inventory, supply advertising and materials on sales promotions, guarantee products with Scotti brand names, and furnish Clusiau a manual of the required procedures and policies. Scotti agreed also to create and purchase national advertising. Clusiau agreed to contribute 8% of its gross sales to Scotti's "advertising and royalty fund," and Scotti agreed to use 62.5% of this contribution for national advertising. Clusiau agreed to comply with Scotti's policies and procedures, concerning the guarantee of its products, to install a telephone under the name Scotti Muffler Center, to pay invoices promptly, and to purchase and sell only products bearing authorized Scotti trade names. The dealership agreement also provided that Clusiau would lease the pipe-bending machine for a stated rental and would "execute such forms and agreements as may be required."

A franchise is defined by Minn.Stat. § 80C.01(4) (1980), which provides in part:

Subd. 4. "Franchise" means a contract or agreement, either express or implied, whether oral or written, for a definite or indefinite period, between two or more persons:

(a) by which a franchisee is granted the right to engage in the business of offering or distributing goods or services using the franchisor's trade name, trademark, service mark, logotype, advertising, or other commercial symbol or related characteristics;

(b) in which the franchisor and franchisee have a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise; and

(c) for which the franchisee pays, directly or indirectly, a franchise fee.

Comparison of the dealership agreement with the statutory definition requires the conclusion that the agreement is a franchise since it clearly meets the criteria specified in the statute. The agreement granted Clusiau "the right to engage in the business of offering or distributing goods or services using the franchisor's trade name, trademark . . . advertising," as specified in paragraph (a) of section 80C.01(4). The agreement also clearly describes the parties' "community of interest in the marketing of goods or services at . . . retail," as required by paragraph (b) of the statute and provides for payment of a franchise fee as required by paragraph (c) of the statute.[1]

---

1. A franchise fee is described in Minn.Stat. § 80C.01(9) (1980) as follows:

"Franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales

It is undisputed that Scotti did not comply with the registration requirements of Minn.Stat. §§ 80C.04–.05 (1980). Minn. Stat. § 80C.02 (1980) provides:

No person may offer or sell any franchise in this state unless there is an effective registration statement on file in accordance with the provisions of sections 80C.01 to 80C.22 . . . .

▮ Plaintiff contends, however, that Clusiau did not prove that Scotti had offered or sold the franchise within the meaning of this section and of Minn.Stat. § 80C.19(2) (1980), which provides:

For the purpose of sections 80C.01 to 80C.22, an offer to sell or to purchase is made in this state . . . when the offer originates from this state or is directed by the offeror to this state and received by the offeree in this state.

The unrefuted affidavit of Clusiau's president states that his first contact with Scotti occurred when he received a telephone call from Scotti's Miami office in which a Scotti representative asked him to consider becoming a Scotti dealer. Minn.Stat. § 80C.01(16) (1980) defines "offer" or "offer to sell" as including "every attempt to offer to dispose of, and every solicitation of an offer to buy, a franchise or interest in a franchise for value." In light of this definition, we agree with the trial court's conclusion that Scotti's overture was an offer within the meaning of this statute. In *Martin Investors, Inc. v. Vander Bie*, 269 N.W.2d 868, 873 (Minn.1978), we rejected as too narrow a reading of the statute a claim that "an offer in the strictest sense of contract law must be shown." Moreover, the trial court's inference that the telephone call initiating the business relationship between Scotti and Clusiau was received by Clusiau in Minnesota is reasonable since Clusiau's place of business was in this state. Thus, by making an offer to sell a franchise within the meaning of the franchise statute without having first complied with the registration requirements of that act, Scotti violated section 80C.02.

whether or not referred to as royalty fees, any payment for goods or services, or any

▮ 2. *The lease as part of the franchise agreement.* It is clear also that the lease, executed contemporaneously with the dealership franchise, was a part of that agreement. The parties' obligation to enter the lease was set forth in the dealership agreement, as were the terms of payment and Clusiau's agreement to execute such forms and agreements as Scotti required, in consideration of the granting of the exclusive dealership agreement. *See Koch v. Han-Shire Investments, Inc.*, 273 Minn. 155, 140 N.W.2d 55 (1966).

3. *The invalidity of the waiver of defense provisions.* Faced with the violation of the franchise statute by its assignor, plaintiff nevertheless relies on the waiver of defense provision in the lease. The provision of the lease relating to assignments states:

This lease . . . may be transferred or assigned by Lessor without notice, and in such event Lessor's transferee or assignee shall have, to the extent transferred or assigned to it, all rights, powers, privileges and remedies of Lessor hereunder. Lessee agrees that . . . the obligations of Lessee hereunder shall not be subject as against any such transferee or assignee, to any defense, setoff or counterclaim available to Lessee against Lessor and that the same may be asserted only against Lessor.

Plaintiff relies also on similar language in the undated instrument in which Clusiau acknowledged Scotti's right to assign the lease and on the parties' stipulation that plaintiff did not know in fact of the exclusive dealership agreement, gave value for the lease, and received it in good faith. Plaintiff urges that the waiver of defense provisions were valid because they are authorized by Minn.Stat. § 336.9–206(1) (1980), which provides in pertinent part:

[A]n agreement by a buyer or lessee that he will not assert against any assignee any claim or defense which he may have

training fees or training school fees or charges. . . .

against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the article on commercial paper (Article 3)....

■ Plaintiff argues that its status is similar to that of a holder in due course and that Scotti's violation of the franchise statute can be a defense against plaintiff only if that violation rendered Clusiau's obligation under the lease a nullity. *See* Minn. Stat. § 336.3–305(2)(b) (1980). Several courts have accorded a qualified assignee that status. *National Bank of North America v. DeLuxe Poster Co.*, 51 App.Div.2d 582, 378 N.Y.S.2d 462 (1976); *Westinghouse Credit Corp. v. Chapman*, 129 Ga.App. 830, 201 S.E.2d 686 (1973); *ITT Indus. Credit Co. v. Milo Concrete Co.*, 31 N.C.App. 450, 229 S.E.2d 814 (1976). Plaintiff also relies on *Chase Manhattan Bank v. Foster Pontiac, Inc.*, 94 Wis.2d 694, 289 N.W.2d 372 (1979) in which the court held that the waiver of defense clause in a similar lease between Scotti and the defendant which had been assigned to plaintiff was valid. The Wisconsin court rejected as without merit the lessee's claim that the lease and an instrument acknowledging the lessor's right to assign the lease were in fact a franchise. That case is distinguishable in that there was no evidence of a dealership agreement similar to the one determined in this case to be a franchise subject to Minnesota's franchise statute. In our view this difference justifies and requires a holding that the waiver of defense provisions were contrary to public policy.

As the trial court pointed out, enforcement of waiver of defense provision against Minnesota residents who have entered franchise agreements with franchisors who failed to comply with the franchise statute would adversely affect the remedial reach of that statute. We recognized in *Martin*

that the franchise statute was adopted in 1973 as remedial legislation designed to protect potential franchisees within Minnesota from unfair contracts and other prevalent and previously unregulated abuses in a growing national franchise industry. In that case we approved the decision of the trial court granting the franchisee rescision against the franchisor and its president pursuant to Minn.Stat. § 80C.17(1) (1980), which provides:

A person who violates any provision of sections 80C.01 to 80C.13 and 80C.15 to 80C.22 or any rule or order thereunder shall be liable to the franchisee or subfranchisor who may sue for damages caused thereby, for rescision, or other relief as the court may deem appropriate.

■ We construe this provision to declare the legislature's intent to afford the franchisee who suffers harm by reason of the franchisor's violation of the franchise statute the right to have his agreements with the franchisor treated as entirely void and to be restored to the position he occupied prior to his involvement with the franchisor. The effect of the remedy of rescision is generally to extinguish a rescinded contract so effectively that in contemplation of law it has never had existence. *Koch v. Han-Shire Investments*, 273 Minn. 155, 140 N.W.2d 55 (1966). If, notwithstanding the remedy granted by section 80C.17(1), plaintiff can enforce the waiver of defense provisions, to which Clusiau was undoubtedly required to accede in order to receive the Scotti franchise, the remedial reach of the franchise statute is unreasonably narrowed. A franchisor who violates the statute could not avoid the franchisee's right of rescision, and we do not believe that the legislature intended that an assignee of the franchisor should be permitted to do so through assertion of the waiver of defense provisions. We hold the provisions contrary to public policy in such circumstances.[2]

Affirmed.

2. Although we do not base decision thereon, we note that the Commissioner of Securities and Real Estate promulgated a regulation, Minn.

Reg.S.Div. 1714(a), effective January 13, 1975, proscribing the use of waiver of defense claus-

es in franchise agreements as an unfair and inequitable practice within the meaning of

Minn.Stat. § 80C.14 (1980).