WESTERN CONTRACTING
CORPORATION,
Appellant,

v.

The DOW CHEMICAL COMPANY,
Appellee.

The DOW CHEMICAL COMPANY,
Appellee,

v.

WESTERN CONTRACTING
CORPORATION,
Appellant.

No. 81–1339.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1981.

Decided Dec. 1, 1981.

Rehearing Denied Dec. 24, 1981.

Norton & Christensen, Goshen, N. Y., for appellant; Henry N. Christensen, Jr., argued, Richard B. Golden, Goshen, N. Y., of counsel.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Michael Berens, argued, William P. Studer, Madge S. Thorsen, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HUNTER,* Senior District Judge.

LAY, Chief Judge.

This appeal arises from consolidated cases brought by Western Contracting Corporation (Western) on grounds of breach of contract and fraud and by Dow Chemical Company (Dow) for payments due and for foreclosure of a mechanic's lien. Pursuant to a trial to the court, the Honorable Earl R. Larson presiding, a judgment of $328,177.11 was entered for Dow, and Western appeals, claiming that: (1) the trial court erred in concluding that the contract unambiguously required Dow to exercise its "best efforts" regarding fragmentation; (2) the trial court erred in finding that Dow, in fact, had exercised its "best efforts" in contract performance; (3) the trial court erred in finding that Dow made no fraudulent representation regarding control of fragmentation size; and (4) the trial court erred in its factual findings regarding the extent of Dow's damages. Upon review of the record and briefs, we affirm the judgment of the district court.

---

* Elmo B. Hunter, Senior District Judge, Western District of Missouri, sitting by designation.

*Facts.*

On April 17, 1974, Western contracted with United States Steel (Steel) for site preparation and rough excavation for construction of four additions to Steel's Minntac facility at Mountain Iron, Minnesota. By mid-February 1975, Western had encountered significant scheduling and other difficulties in its performance of the contract. At that time Western contacted Dow's general manager of explosives for assistance, as he had demonstrated to Western earlier in 1973 Dow's blasting products and the capabilities of its "delta crater" method of blast design. A series of four test shots, which were engineered partly by Western and partly by Dow in late 1974 and early 1975, demonstrated that Dow could more efficiently effectuate the Minntac rock excavation with smaller fragmentation. Western then subcontracted the blasting operation to Dow on March 20, 1975, subject to the following pertinent provisions:

Article II—Rate of performance.

2.1 The work to be performed under this Agreement shall be commenced within one day after receipt of notice to proceed from Western but in no event later than *30 days from the date hereof.*

2.2 The rock to be removed shall be fragmented to sizes at least as small as the rock fragments that resulted in two Dow test "shots" previously completed at U.S. Steel's Minntac Concentrator Area and shall be tumbled to unlock the "shot" rock.

2.3 Dow shall drill, load and shoot rock for removal at the rate of 16,000 cubic yards per each regular working day for a total of 400,000 cubic yards per month.

Article III—Best Efforts.

3.1 Dow's obligation under this Agreement shall be to use its best efforts

only to perform the work at the Rate of Performance spelled out in Article II, above.

3.2 Dow shall utilize its best efforts to blast the rock such that bottoms of excavations will be within neat line tolerances as planned; however, Dow will not be subject to penalty for overblasting beyond neat lines.

As the Minntac job progressed, Western incurred increased difficulty and delay in rock removal due to the size of fragmentation from the blasting operations; generally, the larger the fragmentation, the greater the time and difficulty involved in Western's removal operations. Dow and Western attempted to alleviate these problems through blast design revisions and secondary blasting.

At the project's completion Western sued Dow in federal district court on grounds that Dow breached the subcontract agreement and that the agreement was induced by the fraudulent misrepresentation that Dow possessed a blasting system with which it could control the size of rock fragmentation. Dow counterclaimed on grounds of Western's nonpayment of sums owing for work performed. A separate state action by Dow to foreclose a mechanic's lien was removed to federal district court, and both actions were consolidated for trial in the district of Minnesota. The court found that Dow had exercised its "best efforts" as required by the contract, and that Western had relied upon the test shot results, not upon any representations by Dow regarding fragmentation size.

*The "Best Efforts" Clause.*

Western first claims that Dow failed to blast the rock to sufficiently small fragmentation to comply with the subcontract, and that such failure damaged Western by, *inter alia*, preventing receipt of a $625,000 bonus from Steel.[1] The district court held

1. Unknown to Dow, Western and Steel had contemporaneously negotiated a settlement agreement for extended performance time and additional compensation, which provided in part:

1. In settlement of all Contractor's claims for additional compensation resulting from any conditions occurring on or before March 15, 1975 owner shall pay contractor the sum of $200,000 upon execution of this Supplemental Agreement.

that the "best efforts" requirement of paragraph 3.1 of the subcontract clearly and unambiguously pertains to all of the contractual obligations encompassed in article II, entitled "Rate of performance." Specifically, the court held that Dow was required to exercise its "best efforts" in fragmenting rock to sizes equivalent to that in the test shots. The trial court, after weighing the conflicting testimony, found that Dow substantially complied with this requirement, and, therefore, did not breach the agreement.

Western contends that the best efforts obligation of paragraph 3.1 clearly and unambiguously applies only to the rate of performance stated in paragraph 2.3. Western argues that paragraphs 2.1 and 2.2 contain other conditions of performance, but no "rates", despite inclusion in article II. Therefore, it is Western's contention that the best efforts requirement does not apply to fragmentation size, and that Dow's performance was not equivalent to that in the test shots. Alternatively, Western urges that inclusion of paragraphs 2.1 and 2.2 in article II creates an ambiguity because they do not refer to rates of performance but appear in the article so entitled. Western further submits that parol evidence, specifically the original oral agreement and purchase order, is admissible to explain this ambiguity in the subcontract to mean that duplication of the test shot results was intended. Finally, it is Western's assertion that Dow's performance fell far short of the test shot results.

 As to the presence or absence of an ambiguity and interpretation of the contract, such a question is a matter of law and is not, therefore, subject to the "clearly erroneous" standard of review by this court. *Swanson v. Baker Industries, Inc.*, 615 F.2d 479, 483 (8th Cir. 1980). A careful reading of paragraph 3.1 in conjunction with article II of the subcontract leads this court to the conclusion that the district court properly held that Dow's obligation regarding fragmentation was clearly and unambiguously exercise of its best efforts. Because we find the contract unambiguous, the contradictory parol evidence was properly excluded. *Republic National Life Insurance v. Lorraine Realty*, 279 N.W.2d 349 (Minn. 1979.)

 As to whether Dow fulfilled this obligation to exercise its best efforts to match test shots fragmentation, this court is bound by the "clearly erroneous" standard of review. Fed.R.Civ.P. 52(a). Giving due deference to the trial court's opportunity to weigh the extensive and conflicting testimony surrounding this question, this court must affirm also the lower court's factual finding of substantial compliance with effectuating fragmentation equivalent to that in the test shot results.

*Fraud.*

 Western's second claim is that Dow misrepresented that it could predict and control fragmentation size with its "delta crater" blasting technique, that Western entered into the subcontract in reliance upon this representation, and that it sustained damages as a result of this fraudulent inducement. Fraud, under Minnesota law as recognized by this court, requires: (1) a representation; (2) the representation

---

5. If Contractor completes all the excavation in Concentrator Step III and the Fine Crusher Area on or before June 1, 1975, or such later date as results solely from an extension of time granted pursuant to Section 4 hereof, Owner shall pay Contractor a bonus of $625,000. If Contractor completes all the excavation in Concentrator Step IV and Agglomerator Steps III and IV on or before October 1, 1975, or such later date as results solely from an extension of time granted pursuant to Section 4 hereof, Owner shall pay Contractor a bonus of $625,000.

Western met the June 1, 1975, deadline and received the first $625,000 bonus. However, due to labor strikes, the second bonus date was extended to October 31, 1975. Although Dow substantially completed its portion of the next phase by mid-October, Steel denied Western the second bonus. Western sued Steel in district court seeking the second $625,000 bonus plus $2,200,000 in damages, alleging substantial compliance with the revised contract; the parties eventually settled with an agreement that Western had failed to meet the second bonus deadline.

must be false; (3) the representation must deal with past or present fact; (4) the fact must be material; (5) the fact must be susceptible of knowledge; (6) the representer must know the fact is false or assert it as of his own knowledge; (7) the representer must intend to have the other person induced to act or justified in acting upon it; (8) the other person must be induced to act or justified in acting; (9) that person's actions must be in reliance upon the representation; (10) that person must suffer damages; and (11) the misrepresentation must be the proximate cause of injury. *Hanson v. Ford Motor Co.*, 278 F.2d 586, 591 (8th Cir. 1960).

■ The court below, in essence, disposed of the fraud issue in its findings that Western failed to prove the first of these requirements. The district court found that Dow made no representations regarding the ability to control and predict fragmentation size, but that it only claimed the ability to effectuate fragmentation better than had Western prior to the subcontracting. Both parties apparently agree that Dow's test shot and contract results were, in fact, better than Western's previous results, and the district court further found that Western relied upon the superior results, not upon any statements, in its decision to subcontract to Dow. In light of the district court's opportunity to observe the credibility of testimony and the substantial evidence supporting Dow's position, we do not find the clear error urged by Western, and must, therefore, affirm. Western also contests the court's findings regarding the other elements of fraud; but, if no threshold finding of a representation is made addressing the other elements of fraud become superfluous.

*Damages.*

■ Because we affirm the lower court's holding regarding the absence of any breach or fraud, we need not address the issue of Western's damages. However, Western also contests calculation of Dow's damages for nonpayment, attacking specifically the amount of additional work performed by Dow. Such a determination is a question of fact; and, like most of the other issues in this case, this issue was the subject of significant conflicting testimony and differing methods of calculation. Under the contract, Dow received $1.17 per cubic yard of rock drilled and blasted. Dow claimed $202,448.84 for additional production, but the district court ultimately relied upon calculations in Western's exhibit 61 to reach a figure of $88,844.18. The accepted figure was based upon the number of truckloads of rock removed after Dow took over times the average cubic yards of rock per truck. Although the figures relied upon were Western's, Western now claims that the accurate method of calculation of Dow's production requires three different averages taken from three different time frames. Because Western's own convincing evidence in exhibit 61 shows that 75,935.2 more cubic yards of rock were hauled by Western while Dow was on the job than were credited to Dow, we must sustain the lower court's award for additional production.

Therefore, for the reasons discussed herein, the district court's decision is in all matters affirmed.