**Luzerne MUTSCH, Respondent,**

v.

**Iraj RIGI, Appellant.**

**No. C4–88–598.**

Court of Appeals of Minnesota.

Oct. 11, 1988.

Frederick A. Bohling, Daly, Bohling & O'Connor, Burnsville, for respondent.

Phillip R. Krass, Krass & Monroe Chartered, Shakopee, for appellant.

Heard, considered and decided by FOLEY, P.J., and NORTON and LESLIE *, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from a judgment awarding respondent Luzerne Mutsch money damages due pursuant to a promissory note. The trial court found that misrepresentation had not occurred when Mutsch had merely expressed an opinion and belief regarding the profit potential of a business. Appellant Iraj Rigi argues that the trial court's judgment was clearly erroneous.

## FACTS

Mutsch purchased a restaurant called Chaucer's On The Lake in January 1983, and opened for business in April 1983. In June 1983, he began negotiations with Rigi to sell the restaurant, and the sale was completed on June 23, 1983.

The original agreement required the assumption of a $58,200 mortgage and a $30,000 cash payment. The cash payment was to be made in the following manner: $5,000 cash upon the execution of the purchase agreement; $18,000 cash on or before the time of closing; and the $7,000 balance was to be paid pursuant to a promissory note due and payable two years after the date of closing.

A supplement to the purchase agreement signed approximately one month later provided for additional consideration in the amount of $7,000, payable if the restaurant grossed more than $175,000 for a two-year period following the sale. Rigi claims on appeal that he refused to proceed with the purchase unless the $7,000 balance was payable under the terms of the supplemental agreement rather than the original agreement.

The trial court awarded Mutsch $7,000. It held that the promissory note was a legal obligation which had to be paid, and

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

that the $7,000 obligation in the supplemental agreement was an additional obligation that had no bearing on the promissory note obligation.

On appeal Rigi also claims misrepresentation by Mutsch. Rigi asserts Mutsch represented that the restaurant would gross $500 per day, that Rigi relied on that representation, and that he did not gross that amount. Rigi testified that he would not have bought the restaurant if he had known the actual gross receipts.

While the trial court made no specific finding regarding misrepresentation, it held that almost all of the matters in the case turned on the credibility of the parties, and that Mutsch prevailed.

## ISSUES

1. Was the trial court clearly erroneous in determining that Rigi owed Mutsch $7,000 under the promissory note?

2. Was the trial court clearly erroneous in determining that Mutsch did not engage in misrepresentation?

## ANALYSIS

■ Where a trial judge sits without a jury, the standard of review varies with the character of the evidence. *In Re Trust Known As Great Northern Iron Ore Properties*, 308 Minn. 221, 225–226, 243 N.W.2d 302, 305, *cert. den. sub. nom., Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). Where the evidence is partly oral and the balance written, and the written evidence does not render the credibility of the oral testimony extremely doubtful, the appellate court should defer to the trial court's assessment of the evidence unless clearly erroneous. *Bloomington Electric Co. v. Freeman's, Inc.*, 394 N.W.2d 605, 607 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Dec. 17, 1986) (citing *Great Northern Iron Ore Properties*, 308 Minn. at 225–226, 243 N.W. 2d at 305).

■ 1. The trial court was not clearly erroneous in determining that Rigi owed Mutsch $7,000. The Minnesota Supreme Court has held that "where there is no ambiguity in the written terms of a contract, construction by a trial court or an appellate court is inappropriate." *North Star Center, Inc. v. Sibley Bowl, Inc.*, 295 Minn. 424, 426, 205 N.W.2d 331, 332 (1973) (citing *The Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 135 N.W.2d 681 (1965).

The language used in the documents is free of ambiguity, and there is no need for construction. The original purchase agreement provides in part:

All such assets are sold for the sum of Thirty Thousand Dollars ($30,000.00) to be paid at the following time and in the following manner: $5,000.00 cash, upon the execution of this Purchase Agreement, and $18,000.00 cash on or before the time of closing. The balance of $7,000.00 to be paid by Buyers executing a promissory demand note which shall become due and payable in two years after from the date of closing.

The supplemental agreement provides in part:

In addition to the consideration previously provided the Buyers agree to pay Seller an *additional* Seven Thousand and no/100 Dollars ($7,000.00) if the Buyers have gross sales which exceed One Hundred Seventy-five Thousand and no/100 Dollars ($175,000.00) for a two (2) year period from July 1, 1983 thru June 30, 1984 and July 1, 1984 thru June 30, 1985.

(Emphasis added.) Mutsch is receiving his total purchase price and nothing more. The promissory note and the supplemental agreement are distinct and separate documents, and they are unambiguous. It is clear that the $7,000 described in the promissory note was not paid. The supplemental agreement in no sense modified the promissory note. In fact, it did not even make reference to the existence of a promissory note.

Rigi asserts that Mutsch admitted on cross-examination that the $7,000 promissory note was governed by the terms in the supplemental agreement. Although this is true, careful examination of the record reveals that Mutsch was pursuing payment of $7,000 due and owing under the promis-

sory note. In his opening argument, counsel for Mutsch stated:

> We're before the Court today with claims arising out of the Purchase Agreement, the supplement to the Purchase Agreement, and the promissory note that was signed by the defendant running to the plaintiff in the amount of $7000. Basically, Your Honor, in a nutshell, the plaintiff is claiming that he is owed the $7,000 together with interest.

Further, Mutsch admitted on cross-examination that he had instituted the lawsuit for the $7,000 referred to in the promissory note.

> The Minnesota Supreme Court has held: Inconsistencies and conflicts of this type are typical of trials where the witnesses are trying to reenact events which occurred in a stressful situation. They are a sign of the fallibility of the human perception—not proof that false testimony was given at the trial. In fact, if the testimony of every witness was inherently consistent and conformed perfectly with that of every other in a case such as this, one experienced in the assessment of testimony would be startled and, perhaps, suspicious.

*State v. Hanson,* 286 Minn. 317, 335, 176 N.W.2d 607, 618 (1970).

Mutsch's intentions were clear. He brought a claim to collect money owed pursuant to a promissory note. An inconsistent statement given under cross-examination will not vitiate his original motive behind bringing his claim.

2. The trial court was not clearly erroneous in determining that Mutsch did not engage in misrepresentation. It made no specific finding on each element of fraud; it simply articulated the importance placed on the credibility of the parties:

> Regarding the other contentions of the defendant, the Court can only point out that the resolution of almost all of the matters in dispute in the case turn on the *credibility of the parties* and that in this respect the Court takes the view that Mr. Mutsch prevailed. On balance, the plaintiff proved most of his case by the great-

er weight of the evidence and hence the Court's ruling.

(Emphasis added.)

■ Mutsch correctly argued that the rule of law in Minnesota is that expressions of mere opinion or conjecture are not actionable. *Rother v. Hiniker,* 208 Minn. 405, 294 N.W. 644 (1940). The testimony by Mutsch reveals that he gave Rigi his opinion regarding the profitability of the restaurant. Reliance on this opinion alone would not be justified without any statements or expressions of certainty. *See* Keeton, *Fraud: Misrepresentations of Opinion,* 21 Minn.L.Rev. 643 (1937).

■ Mutsch testified regarding his profit experience in the three months he operated the restaurant. He explained that during the term of his operation of the business he was open for lunch, and not for dinner, and was basically in a shakedown period. Mutsch explained that the profitability of a restaurant is largely set by the liquor business and that dinners are much more lucrative than lunches for any restaurant.

Mutsch gave Rigi his *opinion* that based on his experience with Chaucers On The Lake and the restaurant business in general, there was no reason to anticipate that Rigi would have a problem grossing $500 per day if it were open for dinner and lunch, and that this figure would yield about an annual gross of $150,000.

Further, the record reveals that Rigi made many inspections of the business prior to purchasing it. Mark Heimes, an employee of both Mutsch and Rigi, testified that Rigi was becoming a "permanent fixture" in the restaurant by examining the day-to-day activity of the business. Mutsch also testified that during the time that Rigi was contemplating acquiring the business, Rigi was virtually given run of the business, and that the books of the restaurant were open to him during the period of negotiations.

The trial court believed Mutsch and found insufficient evidence to support a claim of fraud. This finding is not clearly erroneous. Since the trial court had before

it credible testimony on which to base its finding and the finding is not manifestly contrary to the evidence, we are bound by it. *Rosso v. City of Minneapolis,* 295 Minn. 556, 204 N.W.2d 214, 215 (1973).

## DECISION

AFFIRMED.

NORTON, J., dissents.

NORTON, Judge (dissenting).

I respectfully dissent. I believe the language of the supplementary purchase agreement is ambiguous; and after looking at the surrounding circumstances of this transaction, that the trial court clearly erred in finding that the parties intended to increase the purchase price, rather than to modify the terms of the promissory note.

Whether a contract is ambiguous is a legal question, and therefore not subject to the clearly erroneous standard of review. *Western Contracting Corp. v. Dow Chemical Co.,* 664 F.2d 1097, 1100 (8th Cir.1981). A contract is ambiguous if it is susceptible to more than one interpretation based on its language alone. *Lamb Plumbing & Heating Co. v. Kraus-Anderson,* 296 N.W. 2d 859, 862 (Minn.1980). This supplemental agreement must be read in context with the original agreement. *Chase Manhattan Bank, N.A. v. Clusiau Sales & Rental, Inc.,* 308 N.W.2d 490 (Minn.1981).

I believe the language in the supplemental agreement, "In addition to the *consideration previously provided* the Buyers agree to pay Seller an additional Seven Thousand," is ambiguous. The original agreement provides that the buyer was to pay $23,000 on or before the day of closing and $7,000 two years later. When viewed in this light it is unclear whether the parties meant the money "previously paid" at the time the supplemental agreement was executed, or the purchase price "previously set out" in the prior agreement.

Because I believe the agreement language is ambiguous, extrinsic evidence must be considered to ascertain the meaning and the intent of the parties. *Kehne Electric Co. v. Steenberg Construction*

*Co.,* 287 Minn. 193, 196, 177 N.W.2d 309, 311 (1970). The court must view the agreement as a whole, and the plain language of the agreement, in the light of the surrounding circumstances of the parties at the time the agreement was negotiated and executed. *Midway Center Assocs. v. Midway Center, Inc.,* 306 Minn. 352, 356, 237 N.W. 2d 76, 78 (1975).

The majority's view that a buyer would unilaterally ask for an increase in the sales price, flies in the face of human nature. In focusing on the negotiations between the parties, I believe it lacks all credibility that the buyer would ask the seller for an addition to their agreement which would require Rigi, the buyer, to pay an additional $7000 over the $30,000 purchase price provided for by the prior agreement. I believe that the parties intended the consideration "previously provided" to be the money previously paid, which at that time was $23,000 and that the parties agreed to have the remaining $7000 payment be based upon the amount of business Rigi did. Additionally, Mutsch, the seller, admitted on cross-examination that the $7000 promissory note was governed by the terms in the supplemental agreement.

I believe both the trial court and the majority err in finding that two separate $7000 amounts are intended by the parties. The supplemental agreement clearly references to the original purchase agreement, and the original purchase agreement includes the $7000 promissory note as part of the purchase price, to be paid two years later. The supplemental agreement is certainly meant to substitute the absolute $7000 promissory note payment in two years, for a new provision which makes the $7000 amount contingent on how well the business has done in two years.

The majority finds it significant in interpreting the meaning of this contract that Mutsch brought a claim to enforce the promissory note. While Mutsch may have brought a claim to collect money owed pursuant to the promissory note, Mutsch is not entitled to collect on this claim if the contingencies in the supplemental agreement were not fulfilled.

I believe the trial court clearly erred, in light of the negotiations and the surrounding circumstances of the parties, in finding that the parties intended the $7000 in the supplemental agreement to be additional to the $30,000 purchase price "previously set out" in the prior agreement, rather than additional to the $23,000 "previously paid" by the buyer.