967 F.2d 1208
 RICO Bus.Disp.Guide 8037, RICO Bus.Disp.Guide 8109
 AMERICAN COMPUTER TRUST LEASING, Appellee,
v.
BOERBOOM INTERNATIONAL, INC., Appellant,
v.
ADP; Automatic Data Processing Dealers Services, Inc.;
Automatic Data Processing, Inc.; International Harvester
Co., also known as Navistar International Corporation; J.I.
Case Co., a wholly owned subsidiary of Tenneco; John Doe;
Richard Roe, Appellees.
AMERICAN COMPUTER TRUST LEASING, Appellee,
v.
JACK FARRELL IMPLEMENT CO., Appellant,
v.
ADP; Automatic Data Processing Dealers Services Inc.;
Automatic Data Processing, Inc.; International Harvester
Co., also known as Navistar International Corporation; J.I.
Case Co., a wholly owned subsidiary of Tenneco; John Doe;
Richard Roe, Appellees.
 No. 91-3064.
 United States Court of Appeals, Eighth Circuit.
 Submitted May 13, 1992.
Decided June 23, 1992.
 
 James R. Anderson, Marshall, Minn., argued, for appellant.
 J. Thomas Vitt, Minneapolis, Minn., argued (Craig D. Diviney and Margaret M. Zverinova, on the brief), for American Computer Trust Leasing and Automatic Data Processing.
 John Q. McShane, Minneapolis, Minn., argued (Mary E. Bolkcom, on the brief), for appellee Navistar Intern.
 Robert Alan DuPuy, Milwaukee, Wis., argued (Bradley G. Clary, St. Paul, Minn., and Paul F. Hovel, Milwaukee, Wis., on the brief) for appellee J.I. Case.
 Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Appellants Jack Farrell Implement ("Farrell") and Boerboom International, Inc. ("Boerboom") appeal from an order of the district court[1] entering summary judgment in favor of appellees American Computer Trust Leasing ("ACTL"), Automatic Data Processing, Inc. ("ADP"), Navistar International Corporation (formerly International Harvester Co.) ("IH"), and J.I. Case Co. ("Case"). ACTL brought suit against appellants to collect unpaid lease payments. Appellants filed a counterclaim against ACTL and third-party claims against ADP, IH, and Case. These counterclaims and third-party claims alleged fraud, breach of contract, breach of warranty, RICO violations, conspiracy, deceptive trade practices, and other charges. In a carefully written and detailed opinion, the district court granted summary judgment in favor of appellees on all the appellants' counterclaims and third-party claims, except appellants' claim against ADP for breach of contract and express warranty. American Computer Trust Leasing v. Jack Farrell Implement Co., 763 F.Supp. 1473 (D.Minn.1991). We affirm and remand the case for the court to proceed on the appellants' remaining claims.
 
 I.
 
 2
 Appellants were long-time farm implement dealers for IH until 1985 when Case purchased some of IH's agricultural equipment operations. After Case's acquisition of IH, both appellants became (and still are) authorized Case farm implement dealers. This case involves the computer equipment and software that a dealer uses to communicate with the manufacturer it represents. We recite the facts in the light most favorable to appellants.
 
 
 3
 In the 1970s, IH began providing computer services to its dealers to increase efficiency. In general, the computer system helped dealers maintain their large parts inventory and customer lists and enabled them to communicate (i.e. share data, place orders, check availability of parts, etc.) with the main office via telephone lines. Under the original IH system, dealers paid IH a monthly fee for the computer services. In the early 1980s, IH began experiencing severe financial difficulties and, in an effort to cut costs, decided to stop providing these computer services. IH elected to abandon its existing computer network and replace it with an "out-source" method of computer networking.
 
 
 4
 Under this new system, each dealer would be responsible to purchase or lease a computer system and software that would communicate with IH's headquarters. In 1983, IH contracted with ADP to design special software for IH and to provide compatible hardware to any dealer who wished to purchase it. Although IH recommended that its dealers purchase their equipment and software from ADP, it did not require its dealers to purchase ADP computers. After the sale of IH to Case, Case entered into a similar agreement with ADP. Both of the ADP agreements (with IH and Case) contain a provision that ADP will pay IH or Case a "royalty" for each computer that a dealer buys. IH claims it bargained for the royalties as consideration for the expertise it developed in computer network systems and for its assistance in marketing the ADP system.
 
 
 5
 Both appellants eventually leased computers from ACTL and entered computer maintenance and software licensing agreements with ADP. Shortly thereafter appellants began to experience great difficulties with their systems. The record indicates that a large percentage of IH and Case dealers also had problems with the ADP computers.
 
 
 6
 When appellants refused to make their lease payments, ACTL brought suit in state court to collect. Appellants made numerous counterclaims and third-party claims, and the suit was removed to federal court. On appeal, appellants argue the district court erred in granting summary judgment on their claims of fraud, RICO violations, conspiracy, and deceptive trade practices.
 
 II.
 
 7
 In reviewing a grant of summary judgment, we apply the same standard as the district court, view the evidence in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. Moore v. Webster, 932 F.2d 1229, 1230-31 (8th Cir.1991). The issue before us is whether "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has demonstrated an absence of evidence to support the nonmoving party's case, the nonmoving party must establish that there is legally sufficient and significantly probative evidence to present to the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Appellants contend that issues of material fact exist regarding all of their claims. Based on our review of the record, we disagree and affirm the entry of summary judgment against appellants.
 
 
 8
 Although appellants make several claims against appellees based on different legal theories, this is essentially a fraud case. To prevail on their fraud claim under Minnesota law, appellants must show appellees either made false representations, Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn.1986), or failed to disclose a material fact in certain circumstances, L & H Airco, Inc. v. Rapistan, Corp., 446 N.W.2d 372, 380 (Minn.1989). Appellants claim appellees committed fraud in both ways.
 
 
 9
 With respect to their claim of fraudulent nondisclosure, appellants contend it was fraud for appellees not to disclose the royalty agreements between ADP and IH/Case.[2] A party does not commit fraud by failing to disclose facts except in certain special circumstances such as: when a confidential or fiduciary relationship exists; when disclosure is necessary to clarify misleading information already disclosed; or, when one party has "special knowledge" of material facts to which the other party does not have access. L & H Airco, 446 N.W.2d at 380. (citations omitted). Appellants have failed to establish the existence any of these special circumstances and therefore appellees were not under a duty to disclose the terms of the royalty agreements.
 
 
 10
 Appellants negotiated with ADP and ACTL concerning this computer equipment and eventually leased computers from ACTL. They also entered into computer maintenance and software licensing agreements with ADP. Because these were ordinary business transactions conducted at arm's length, neither ADP nor ACTL was under a fiduciary duty to disclose the terms of the royalty agreement. See Minnesota Timber Producers Ass'n, Inc. v. American Mut. Ins. Co., 766 F.2d 1261, 1267-68 (8th Cir.1985) (applying Minnesota law), cert. denied, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 778 (1986). Likewise, appellants have failed to show that a duty arose due to ADP's or ACTL's misleading statements or "special knowledge."
 
 
 11
 Appellants have also failed to show IH and Case were under a duty to disclose. Appellants conducted their own independent investigations of the competing computer systems and did not rely exclusively on the endorsements of either IH or Case. Appellants argue that their existing dealer-manufacturer relationships with IH and later Case, combined with IH's and Case's endorsement of ADP, created a situation in which IH and Case had a duty to disclose the royalty agreement. This evidence fails to create a duty to disclose on the part of IH or Case. See W.K.T. Distrib. Co. v. Sharp Elect., 746 F.2d 1333, 1336-67 (8th Cir.1984) (under Minnesota law, ordinary supplier-distributor relationship is not fiduciary in nature).
 
 
 12
 With respect to the claim of fraudulent representations, appellants list eleven statements that allegedly constitute fraud. More precisely, appellants contend these statements create a genuine issue of material fact for trial. To prevail on a claim of fraud by misrepresentation, appellants must show: (1) a false representation of a material fact; (2) made with knowledge of the falsity or made without knowing whether the statement was true or false; (3) made with the intention to induce appellants to act in reliance on the statement; (4) that the representation caused appellants to act in reliance; and (5) pecuniary damage as a result of the reliance. Financial Timing Publications v. Compugraphic Corp., 893 F.2d 936, 942-43 (8th Cir.1990) (quoting Specialized Tours, 392 N.W.2d at 532). None of the statements identified by appellants preclude summary judgment in this case. We pause to discuss three representations which have been emphasized by appellants.
 
 
 13
 The first involves alleged concealment of the royalty agreement and is closely related to appellants' nondisclosure claim. In an affidavit submitted in response to appellees' motion for summary judgment, it is stated that "Steve Boerboom [the principal of appellant Boerboom] specifically recalls asking the IH representative assigned to communicate with Boerboom, probably W.S. Orrell ..., 'What's in this for IH?', to which the IH employee responded, 'Nothing.' " This statement, of course, does not preclude summary judgment against appellant Farrell because there is no evidence Farrell ever knew the statement was made. Nor does this statement preclude summary judgment against Boerboom.
 
 
 14
 Steve Boerboom claims that he and Orrell discussed the ADP system at the time Boerboom was deciding which computer to buy. In his deposition, Steve Boerboom indicated that he felt "coerced" by Orrell's statements such as, "[T]his is the system that [IH is] backing," and "This is the one they looked into." Steve Boerboom also stated that Orrell "took us out for supper" after "signing up" to purchase the ADP system. We assume that Orrell's response to Steve Boerboom's question, "What's in this for IH," took place in this same time period.
 
 
 15
 In Florenzano v. Olson, 387 N.W.2d 168, 172-73 (Minn.1986), the Supreme Court of Minnesota discussed the difficult distinction between negligent misrepresentations and fraudulent misrepresentations. The court stated, "Under neither theory, however, is one held to warrant the truth of all statements made. A good faith, non-negligent mistake is not the basis of liability for misrepresentation in this state." Id. at 173. Based on the record before us, the statement by Orrell represents at most a good faith mistake on the part of IH. There is nothing to indicate that Orrell knew or should have known about the royalty agreement and it does not appear that Orrell was one of the IH employees responsible for demonstrating the ADP system or answering questions about the system. For Orrell's response to be a negligent misrepresentation, Boerboom must show that Orrell "ha[d] not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Id. at 174. Because Boerboom failed to show any such evidence, this statement does not preclude summary judgment.
 
 
 16
 The second allegedly false statement we address was made by ADP concerning the security of the computer systems. Documents distributed by ADP stated that no one could enter the computer system without the dealer's authorization. In fact, ADP could, and did, enter the systems and "deactivated" the software after appellants defaulted on their agreements.[3] Appellants entered into software licensing agreements with ADP which expressly provided that the software was the property of ADP, and that the software license would be cancelled upon default. The record indicates appellants knew that ADP had access to their computer systems to service the software. Because ADP's statements regarding security did not indicate that a dealer could prevent ADP from entering the system, the statements were not false and do not constitute fraud.
 
 
 17
 The third allegedly false representation we discuss is attributed to IH and Case. Appellants argue IH and Case falsely stated that they did "extensive research" before endorsing ADP. Appellants claim no testing of the system was done before the endorsement and the endorsement was given in exchange for the royalty arrangement. The record indicates that IH sought proposals from eleven different computer companies, narrowed the field down to three, and finally selected ADP. ADP was selected because it was a large and financially stable company with experience in the design of this type of computer network. Appellants contend one document in particular shows that IH did not know whether the ADP system worked at the time it endorsed ADP.[4] IH, however, could not have known whether the ADP system worked when it entered into the contract with ADP because the ADP system had not yet been developed. That was the purpose of the IH-ADP contract--for ADP and IH to work together to develop a computer system. In sum, IH's or Case's statements about the amount of research they conducted prior to endorsing ADP were not false and do not constitute fraud.
 
 
 18
 With respect to the remaining representations that appellants identify as fraudulent, we agree with the district court that none of the statements constitute actionable fraud. The statements complained of concern future acts or opinions and, as such, are not fraudulent. See, e.g., Cohen v. Cowles Media Co., 457 N.W.2d 199, 202 (Minn.1990) (representations of future acts), rev'd on other grounds, --- U.S. ----, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991); Mutsch v. Rigi, 430 N.W.2d 201, 204 (Minn.Ct.App.1988) (statements of opinion).
 
 
 19
 In addition to their allegations of fraud, appellants also claim appellees violated RICO, 18 U.S.C. § 1962 (1988), by engaging in a pattern of racketeering activity. As a basis for this claim, appellants allege appellees committed mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 (1988). As discussed above, appellants have failed to establish any actionable fraud and therefore summary judgment on their RICO claims was proper.
 
 
 20
 Although we do not discuss in detail appellants' claims regarding conspiracy and deceptive trade practices, we note that these claims are largely dependent upon the allegations of fraud and therefore are without merit.
 
 III.
 
 21
 We affirm the district court's order in all respects and remand for the district court to consider appellants' remaining claims.
 
 
 
 [1]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota
 
 
 [2]
 Appellees claim the royalty agreement was disclosed to the IH Dealer Council. For purposes of this discussion, we assume, as appellants contend, that the royalty agreement was not disclosed
 
 
 [3]
 There is some question as to whether ADP "deactivated" appellant Boerboom's system. For purposes of this discussion, we assume, as Boerboom contends, that its system was deactivated. We note in passing that in some circumstances issues of "software deactivation" and "software repossession" may pose legal problems. The issue we address in this appeal, however, is whether the statements regarding computer security are fraudulent under Minnesota law. Appellants do not challenge the district court's dismissal of their claims for wrongful software deactivation
 
 
 [4]
 At oral argument, appellants' counsel referred to this as the document that "tells the story of the whole case." The document indicates that at a meeting between IH and ADP in December 1983, while discussing the endorsement of ADP in Canada, an IH representative stated that the IH-ADP contract for the United States was signed prior to knowing whether the ADP system worked